Ernest B. LOPEZ, Petitioner,

v.

Paul J. MADIGAN, Warden, U. S. Penitentiary, Alcatraz, California, Respondent.

No. 36874.

United States District Court
N. D. California, S. D.

July 2, 1959.

Fallon & Hargreaves, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Prior to January 28, 1955, petitioner was confined in the United States Penitentiary at Alcatraz under the terms of sentences totaling seventeen years. On that date, those sentences less good-time deductions having been served, he was conditionally released pursuant to the terms of 18 U.S.C. §§ 4161 and 4164. In March, 1956, however, after receipt by the Board of Parole of information indicating violations of the terms of petitioner's release, and after the failure of petitioner to report, as requested, to his parole officer, petitioner was arrested and returned to Alcatraz. Thereafter, at a

hearing conducted under the terms of 18 U.S.C. § 4207, petitioner's conditional release was revoked, and he was committed to serve the remainder of his original sentences.

From that commitment petitioner now seeks release. In a petition for habeas corpus he urges two grounds for finding the order of revocation invalid. The first is that he sought and was denied the assistance of counsel at the revocation hearing; the second that the information before the Board was so insubstantial that the revocation of his release amounted to an abuse of discretion. Petitioner begins, however, by asserting that since he had been originally discharged from prison not as a parolee but on conditional release, the actions of the Board must be measured against a stricter standard than that normally applied. It is this argument that the Court must first consider.

The status of conditional release, once granted, is governed by 18 U.S.C. § 4164, which provides that:

"A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days."

Petitioner argues that the provision is ambiguous in that it does not make clear the purposes for which the prisoner is to be so considered. To resolve the asserted ambiguity he contends that it is logical to differentiate between persons on parole and those on conditional release because the latter take their status as a matter of right, under 18 U.S.C. § 4163, while parole is awarded only at the discretion of the Board of Parole.

The Court finds no ambiguity and no reason for believing that the statute means anything less or anything other than it says. The statute does not spell it out that prisoners on conditional release are to be deemed, *for all purposes,* as if released on parole, but neither does it express any qualification or limit on

their being so considered. Unless compelling reasons can be shown for reading implied qualifications into the statute, the law must be applied precisely as it was written, without any differentiation between prisoners on parole and those on conditional release. No such reasons appear.

█ It is true that, unlike parole, the status of conditional release, once earned, accrues to the prisoner as a matter of right. Clark v. Surprenant, 9 Cir., 1938, 94 F.2d 969; Collins v. Golden, D.C.D. Neb.1951, 95 F.Supp. 251. But that fact in no way requires that the status of conditional release be vested in a prisoner more securely or more finally than is parole, once parole is granted. Both releases are by legislative grace, and both are conditional. It is not unreasonable that the standards and procedures used to measure breaches of the conditions of one should apply equally to alleged violations of the other.

That no such interpretation was intended by the Congress is made clear by reference to the statute's earlier form. As enacted in 62 Stat. 853, c. 645 (1945), Section 4164 provided, so far as is relevant:

"A prisoner having served the term or terms for which he shall have been sentenced after June 29, 1932, less good time deductions, shall upon release be treated as if released on parole, *and shall be subject to all provisions of law relating to the parole of United States prisoners* until the expiration of the maximum term or terms for which he was sentenced." (Italics added.)

The amendment which put the section in its present form was written not to restrict the application of the parole system, but to add the 180 day provision and, apparently, at the same time to eliminate language which seemed superfluous. See S.Rep. No. 385, 82nd Cong., 1st Sess. (1951). Under the present as under the previous wording of the section, then, all provisions of law relating

to parole were intended to relate equally to conditional release. No decided case appears to deal squarely with this question, but it might be noted that both before and after the 1951 amendment, the cases relating to prisoners on conditional release uniformly treat that status as indistinguishable from parole. See, for example, Zerbst v. Kidwell, 1937, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (concerning 18 U.S.C. § 716b, the predecessor of Section 4164, in which the relevant language is identical to that of the 1948 enactment); Freedman v. Looney, 10 Cir., 1954, 210 F.2d 56; Morneau v. United States Board of Parole, 8 Cir., 1956, 231 F.2d 829. The action of the Board of Parole here, then, must be judged against the same standard applied to its actions in revocation of parole.

Petitioner contends that even by that standard the Board's action was invalid. He alleges that at the revocation hearing he sought to be represented by his own counsel and that Dr. Killinger of the United States Board of Parole denied that request. In an affidavit attached to respondent's answer Dr. Killinger asserts that no such request was made. It is not necessary here, however, to resolve the question of fact. It is the Court's opinion that even if petitioner's assertion be taken as true, the revocation of conditional release remains binding.

Revocation hearings are provided for in 18 U.S.C. § 4207, which reads, in pertinent part:

"A prisoner retaken upon a warrant issued by the Board of Parole, shall be given an opportunity to appear before the Board, a member thereof, or an examiner designated by the Board.

"The Board may then, or at any time in its discretion, revoke the order of parole and terminate such parole or modify the terms and conditions thereof."

The question here is simply whether the "opportunity to appear" provided for in the statute includes the opportunity to appear with or through counsel.

Hearings before the Board are not adversary proceedings. They are informal, unsworn, and not bound by the rules of evidence. Christianson v. Zerbst, 10 Cir., 1937, 89 F.2d 40. Their purpose is as much to form a part of the rehabilitation process as to provide a check on the administrative decision, already tentatively made, that the conditions of release were violated. See Attorney General's Survey of Release Procedures (1939) Vol. IV, pp. 246–247, cited in Fleming v. Tate, 1946, 81 U.S.App.D.C. 205, 156 F.2d 848, 851. The position of the parole authorities, therefore, has consistently been that attorneys do not belong at revocation hearings and that the statute does not authorize their presence. Counsel for petitioner has not cited, nor has the Court found any case in which this administrative practice under 18 U.S.C. § 4207 has been disapproved. Petitioner does, however, urge the relevance of two District of Columbia cases, Fleming v. Tate, supra, and Moore v. Reid, 1957, 100 U.S.App.D.C. 373, 246 F.2d 654. In Fleming, the court construed the District of Columbia statute, D.C.Code (1940) § 24–206, which parallels section 4207, like it requiring that prisoners arrested for alleged violations of parole "be given an opportunity to appear" before the Parole Board. It was there held that "appearance" meant appearance with counsel if the prisoner so chose, and that a refusal of counsel was invalidating error. The Moore case reaffirmed that reading of the D.C.Code provision and went on to indicate that a prisoner must be informed of his right to counsel. It did not, however, as petitioner argues, extend that interpretation to section 4207, the general federal statute.

Nor has any subsequent case suggested that section 4207 should be so read. The only relevant decision cited to the Court is that of Hiatt v. Compagna, 5 Cir., 1949, 178 F.2d 42 affirmed by an equally divided Court, 1950, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639. The Hiatt case referred critically to the

Fleming decision, and noted that the present language of section 4207, which permits not only the Board of Parole but a single member or examiner alone to conduct a revocation hearing, indicated how far the intent of the enactment was from requiring the kind of trial at which counsel would be necessary. The case held that it was not error, under section 4207, for a Parole Board which had invited the presence of counsel at a preliminary proceeding, to deny the petitioner counsel at the revocation hearing itself.

And the authority of the District of Columbia cases has been further undercut by subsequent legislation. A year after the Fleming decision, the Congress amended D.C.Code, § 24–206 to expressly provide that at a revocation hearing the prisoner "may be represented by counsel." Act of July 17, 1947, 61 Stat. 378. But no such change was made in section 4207. The disparity thus created is only one of a number of differences between the general federal system of probation and that which applies only in the District of Columbia. Under 18 U.S.C. § 4202, federal prisoners, other than juveniles, must serve one third of their sentences before being eligible for parole. District of Columbia prisoners, however, under D.C.Code, § 24–203, need first serve only the minimum sentence, which cannot be more than one third the maximum but may be less. And under D.C. Code 201c, the District Parole Board may itself request the reduction of a minimum sentence, a procedure having no counterpart in the general federal system. In each case, the statutory difference operates to the advantage of District of Columbia prisoners. The Court, therefore, cannot find that the disparity created by the 1947 amendment of D.C.Code, § 24–203 was unintentional, or that the same right to counsel impliedly exists under 18 U.S.C. § 4207. Thus the position petitioner takes is not supported by argument either from the purposes of the revocation hearing or from relevant authority.

The Court finds that the denial of counsel at the revocation hearing—if, in fact, such a denial was made—did not invalidate those proceedings.

■■ Petitioner argues additionally that the revocation of his parole was a nullity because the information on which the Board acted was insufficient to justify its decision. This contention is totally without merit. It is true that the Parole Board may not act arbitrarily or capriciously, and that a District Court may nullify a revocation which was itself a nullity. Freedman v. Looney, 10 Cir., 1954, 210 F.2d 56; United States ex rel. De Lucia v. O'Donovan, D.C.N.D.Ill.1952, 107 F.Supp. 347. But it is equally clear under Section 4207 that the revocation of conditional release is a matter for the Parole Board's discretion. The extent to which the grounds for the exercise of that discretion are open to inspection by the courts is a question to which no single answer is consistently given. But the broadest review suggested in the cases goes no further than the determination of whether some substantial evidence of violations was before the Board. Compare United States ex rel. De Lucia v. O'Donovan, supra; Hiatt v. Compagna, supra; Fox v. Sanford, 5 Cir., 1941, 123 F.2d 334. The reliability of that evidence, it is settled, is not a matter open to the courts. Freedman v. Looney, supra; Rogoway v. Warden, 9 Cir., 1941, 122 F.2d 967. The Parole Board Summary filed with respondent's answer shows that at the time petitioner's release was revoked the Board had before it this information: That petitioner had been charged with assault and burglary along with a co-defendant who had confessed, implicating petitioner in those crimes and in an additional attempted burglary; that petitioner was wanted for questioning in regard to a bank robbery; that he had come into the possession of a quantity of new clothing without any apparent source of funds with which to have made purchases; and that he failed to respond to repeated requests, addressed to his home, that he contact

his parole officer. The Court cannot find that information so lacking in substance as to have been incapable of supporting the revocation of parole.

It is, therefore, ordered that the petitioner for habeas corpus be, and the same is hereby denied.